STATE OF CONNECTICUT *v.* CURTIS WIDLAK
(AC 23538)

Dranginis, Flynn and McLachlan, Js.

Argued June 8—officially released September 14, 2004

*Arnold V. Amore II*, special public defender, for the appellant (defendant).

*Richard P. Terbrusch*, certified legal intern, with whom were *Marjorie Allen Dauster*, senior assistant state's attorney, and, on the brief, *James E. Thomas*, state's attorney, and *David L. Zagaja*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Curtis Widlak, appeals from the judgment of conviction, rendered after a jury trial, of one count of fabricating physical evidence in violation of General Statutes § 53a-155 (a) (2) and one count of forgery in the third degree in violation of General Statutes § 53a-140. With respect to both counts, the defendant claims that there was insufficient evidence to sustain the jury's verdict. We disagree and affirm the judgment of the trial court.

From the evidence presented at trial, and the inferences reasonably drawn therefrom, the jury reasonably could have found the following facts. On March 23,

2001, the defendant appeared before the court for a violation of probation hearing. During the initial stages of the proceeding, the prosecutor was informed that on March 31, 2001, the defendant was going to be evicted from the apartment that he shared with his girlfriend, Donna Gawel. The prosecutor later verified that fact by telephoning the Housing Session of the New Britain Superior Court. Concerned that the state would be unable to locate the defendant if he failed to appear at the disposition phase of the hearing, the prosecutor requested that the defendant provide a new address. She also informed the court in the defendant's presence that unless the defendant did so, she was going to seek an increase in his bond.

On March 26, 2001, immediately following the court proceeding at which the prosecutor had requested a new address, the defendant visited an acquaintance, Hermel Michaud, who the defendant knew owned several rental properties. During their conversation, the defendant requested that Michaud provide him with a lease for a rental property. Michaud informed the defendant that he might be purchasing an additional rental property located on Dwight Street in New Britain, but that he did not know the exact address. Michaud also told the defendant that he could not give the defendant a lease for the property because he did not own it yet, and that even if he was able to obtain financing to purchase the property, significant renovation work was needed before the building was habitable. Despite those provisos, the defendant pushed Michaud for a lease, reassuring him that he would not suffer repercussions for doing so. The defendant also provided Michaud with a fictitious address for the property— 146 Dwight Street—even though neither he nor Michaud knew the building's actual address. Michaud eventually agreed to enter into a lease with the defendant. The written lease, dated March 26, 2001, identified the

leased property as 146 Dwight Street, Apartment 1, New Britain, Connecticut, and indicated that occupancy would begin five days later on April 1, 2001.[1]

On March 27, 2001, when the parties again appeared in court for the continuation of the violation of probation hearing, the defendant presented the lease agreement to the prosecutor, and it was admitted into evidence. The prosecutor later telephoned the New Britain tax assessor's office to verify the address but was advised that no such address existed. The prosecutor then assigned Inspector Stephen Kumnick of the office of the state's attorney to further investigate whether the property identified in the lease actually existed. Kumnick's investigation consisted, in part, of a visual inspection of Dwight Street where he verified the assessor's report that the address provided by the defendant did not exist.

On the basis of that information, the prosecutor applied for and obtained an arrest warrant for the defendant, which was executed by Kumnick on March 28, 2001. At the time of his arrest, the defendant had on his person a document that purported to be a statement from Michaud revoking the lease.[2] That statement was not signed by Michaud, and it was subsequently adduced through testimony that the defendant had attempted to persuade Michaud to sign it, but Michaud had refused.

---

[1] Michaud never purchased the property as it was sold before he could obtain financing.

[2] That document provided in relevant part: "I, Mel Michaud, had issued a one year lease on March 26th, 2001, to Curtis Widlak, and his fiance, Donna Gawal, for tenancy on Dwight Street, New Britain, Ct. I had full intentions on renting to both parties, with potential availability on April 1rst, 2001. However, due to constant harassment from a female, which stated she was with the States Attorney's Office, by telephone calls, as well as, a Sheriff, coming to my place of residence, I have revoked/shredded, my agreement for occupancy, with the above mention parties. Signed, Mel Michaud."

The defendant was charged in a two count substitute information with fabricating physical evidence and forgery in the third degree. At trial, after the close of the state's evidence, the defendant filed a motion for a judgment of acquittal, which the court denied. On March 15, 2002, the jury convicted the defendant on both counts and the court subsequently imposed a sentence of thirty months imprisonment on count one, to run consecutively with an unrelated sentence already being served, and six months imprisonment on count two, to run concurrently with the sentences already imposed. This appeal followed.

Before separately addressing the defendant's claims, we note the standard of review governing the claims. "When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict. . . . We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . While jurors may not speculate to reach a verdict, they may draw reasonable, logical inferences from the facts proven to reach a verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Clay*, 51 Conn. App. 694, 697–98, 724 A.2d 1134, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 510–11, 668 A.2d 1288 (1995). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial

rather than direct."[3] (Internal quotation marks omitted.)
Id., 510.

I

The defendant first claims that there was insufficient
evidence to sustain the jury's guilty verdict on the
charge of fabricating physical evidence in violation of
§ 53a-155 (a). We disagree.

Section 53a-155 (a) provides in relevant part: "A per-
son is guilty of tampering with or fabricating physical
evidence if, believing that an official proceeding is pend-
ing, or about to be instituted, he . . . (2) makes, pre-
sents or uses any record, document or thing knowing
it to be false and with purpose to mislead a public
servant who is or may be engaged in such official pro-
ceeding." We must determine, therefore, on the basis of
the facts adduced at trial and the reasonable inferences
drawn therefrom, whether the jury reasonably could
have concluded that the defendant (1) believed that an

---

[3] One component of the defendant's claim that there was insufficient
evidence to support either conviction is that the testimony of Michaud and
Gawal, both defense witnesses, should not be considered by this court. The
defendant contends that because he moved for a judgment of acquittal at
the close of the state's evidence, we must evaluate the jury's verdict only
on the basis of the state's evidence, rather than considering all of the evidence
adduced at trial, including the testimony of Michaud and Gawal. Contrary
to the defendant's assertion, we evaluate the jury's verdict on the basis of
all the evidence adduced at trial. "Under the waiver rule, when a motion
for acquittal at the close of the state's case is denied, a defendant may not
secure appellate review of the trial court's ruling without foregoing the right
to put on evidence in his or her own behalf. The defendant's sole remedy
is to remain silent and, if convicted, to seek reversal of the conviction
because of insufficiency of the state's evidence. *If the defendant elects to
introduce evidence, the appellate review encompasses the evidence in toto.*
The defendant then runs the risk that the testimony of defense witnesses
will fill an evidentiary gap in the state's case." (Emphasis added.) *State* v.
*Rutan,* 194 Conn. 438, 440, 479 A.2d 1209 (1984). The defendant in the
present case took such a risk and offered the testimony of several witnesses
after his motion for a judgment of acquittal was denied. We therefore con-
sider all of the evidence adduced at trial in making our determination.

official proceeding was pending, (2) presented or used the lease knowing it to be false and (3) did so with the purpose of misleading a public servant.

With respect to the first element, the defendant stipulated at trial that the lease was presented while an official proceeding was pending. Turning to the remaining two elements, we conclude that the cumulative impact of the evidence presented at trial and the reasonable inferences drawn therefrom was sufficient for the jury to conclude that the defendant knew the lease was false, and that he used it with the purpose of misleading a public servant.

"Ordinarily, knowledge and intent can be proven only by circumstantial evidence; they may be and usually are inferred from a defendant's conduct." *State* v. *Brown,* supra, 235 Conn. 513. Michaud testified that he informed the defendant that he could not provide him with a lease because he did not own the Dwight Street property and, even if he did, it required significant renovations before it was habitable. Michaud further testified that the defendant provided a fictitious street address for the property to be used in the written lease when Michaud told him he did not know the building's actual address. When viewed in the light most favorable to sustaining the jury's verdict, the evidence was sufficient for the jury reasonably to infer that the defendant knew the lease was false.[4]

The evidence presented at trial also was sufficient for the jury to conclude that the defendant presented

---

[4] Although Gawal provided testimony inconsistent with Michaud's testimony, the jury was entitled to disbelieve her rendition of events in favor of Michaud's or another witness' rendition. On appeal, "we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . [We] cannot substitute [our] own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Mejia,* 233 Conn. 215, 224, 658 A.2d 571 (1995).

the false lease for the purpose of misleading a public servant.[5] As previously noted, the defendant was present in the courtroom when the prosecutor requested that the defendant supply a new address and advised the court that if the defendant failed to do so, she would move for an increase in the defendant's bond. Immediately after leaving the court that same day, the defendant visited Michaud and pressured him for a lease, which Michaud later provided. The lease was subsequently presented to the prosecutor at the continuation of the violation of probation proceeding. That evidence supports the reasonable inference that the defendant pursued and obtained the lease for the purpose of misleading the prosecutor into believing that he had obtained a new address so that she would not seek an increase in his bond.

We accordingly conclude that sufficient evidence existed to support the jury's guilty verdict on the charge of fabricating physical evidence.

## II

The defendant next claims that there was insufficient evidence to sustain the jury's guilty verdict on the charge of forgery in the third degree in violation of § 53a-140. We disagree.

Section 53a-140 (a) provides in relevant part: "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he . . . issues or possesses any written instrument which he knows to be forged." We must determine, therefore, on the basis of the facts adduced at trial and the reasonable inferences drawn therefrom, whether the jury reasonably could have concluded that the defendant (1) with the intent to defraud or deceive (2) issued or possessed

---

[5] At trial, the defendant stipulated that the prosecutor was a public servant.

a written instrument which he knew to be forged.[6] A written instrument is forged if it is "falsely made, altered or completed." *State* v. *Brown*, supra, 235 Conn. 509; see also General Statutes § 53a-137 (7).

The evidence presented at trial was sufficient for the jury to conclude that the defendant intended to deceive the prosecutor. Although "deceive" is not defined in the General Statutes, it is appropriate for us to look at its dictionary definition to clarify its ordinary meaning. See, e.g., *State* v. *Perez*, 78 Conn. App. 610, 644, 828 A.2d 626 (2003). "Deceive" means "to cause to accept as true or valid what is false or invalid." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993).

On the basis of the testimony presented at trial, the jury reasonably could have concluded that the defendant presented the forged lease to the prosecutor to cause her to believe that he had acquired a new address so that the she would not seek to increase his bond. The evidence presented at trial also was sufficient for the jury to conclude that the defendant knowingly possessed a written instrument which he knew to be forged.

Thus, when the defendant presented the lease to the prosecutor, he knew that Michaud did not own the property and, therefore, could not lease it. He also knew that even if Michaud could obtain financing to purchase the building, the substantial renovations required meant that the units would not be habitable by April 1, 2001, the date identified as the beginning of the lease period. On the basis of that evidence and the reasonable inferences drawn therefrom, the jury reasonably could have concluded that the defendant knowingly possessed a lease, which he knew to be forged. We accordingly conclude that there was sufficient evidence to sustain

---

[6] At trial, the defendant stipulated that the lease was a written instrument for purposes of § 53a-140.

the jury's verdict on the charge of forgery in the third degree.

The judgment is affirmed.

In this opinion the other judges concurred.