## STATE OF CONNECTICUT *v.* KENNETH WEBSTER
(AC 31005)

Gruendel, Harper and Mihalakos, Js.

Argued October 19, 2010—officially released March 15, 2011

*Richard S. Cramer*, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *David S. Shepack*, state's attorney, and *Devin T. Stilson*, supervisory senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Kenneth Webster, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), sale of narcotics within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d), possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), interfering with an officer in violation of General Statutes § 53a-167 (a), tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1) and two counts of possession of narcotics in violation of General Statutes § 21a-279 (a).[1] The defendant claims that (1) the evidence did not support his conviction of

[1] The court imposed a total effective sentence of twenty-three years imprisonment, suspended after nine years, followed by five years of probation.

sale of narcotics within 1500 feet of a school; (2) with regard to the counts of sale of narcotics within 1500 feet of a school and possession of narcotics with intent to sell, the court improperly instructed the jury as to the intent necessary for the crimes; (3) the court improperly admitted certain testimony from a state's witness; and (4) the court improperly limited defense examination of one of the state's witnesses. We reverse the judgment only as to the defendant's conviction of sale of narcotics within 1500 feet of a school and affirm the judgment in all other respects.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On June 1, 2007, Jeanne Pereira arranged to purchase $80 worth of crack cocaine from the defendant on behalf of other parties. Pereira had a history of obtaining illegal drugs from the defendant. To complete the purchase, the defendant agreed to meet Pereira on Prospect Street in Torrington, behind St. Francis School. At times relevant, St. Francis School was a private school serving students in grades three through eight, and the defendant was not a student enrolled at the school. At approximately 8 p.m., the defendant drove his automobile to the location, and Pereira entered his automobile. The defendant drove away from the location with Pereira, during which time he obtained $80 from Pereira and gave Pereira two bags of crack cocaine as well as several loose pieces of crack cocaine. Consistent with her prior drug purchases from the defendant, Pereira understood that the two bags of crack cocaine were for the parties for whom she was purchasing the crack cocaine; the loose pieces of crack cocaine were meant to compensate Pereira for purchasing the drugs from him. The defendant returned with Pereira to the location near the school. Pereira exited the automobile and walked away. The defendant drove from the scene.

While conducting surveillance, Steve Rousseau and Thomas Rouleau, both sergeants with the Torrington police department, observed some of the activities of the defendant and Pereira. Shortly after Pereira exited the defendant's automobile, the officers detained her and recovered the crack cocaine that the defendant had put in her possession. After Pereira admitted that the defendant had sold the drugs to her, the officers drove to the defendant's residence to await his return.

When the defendant returned home, the officers approached the defendant and identified themselves as police officers. The defendant exited his automobile, began to back away from the officers and raised his hands in a somewhat threatening manner. The defendant ignored the officers' commands despite being told that the officers would use their taser guns if he failed to obey their commands. The officers told the defendant that he was being placed under arrest. The defendant pulled away from Rousseau as Rousseau attempted to handcuff the defendant. When the defendant reached into his pocket, Rouleau fired his taser gun in the defendant's direction, but accidentally hit Rousseau with a projectile discharged from the taser gun, causing Rousseau to experience the immobilizing effect of the taser gun.

The defendant ran from the officers. Rouleau pursued the defendant, ordering him to show his hands and stop. Eventually, Rouleau apprehended the defendant and, after a physical struggle, detained the defendant. Nearby, Rouleau discovered bags of crack cocaine, with a street value of approximately $450, that the defendant either had dropped or had discarded during the foot chase. Additionally, police found $407 in the defendant's possession. Additional facts will be set forth as necessary.

## I

First, the defendant claims that the evidence did not support his conviction of sale of narcotics within 1500 feet of a school. Acknowledging that the state presented evidence that he sold crack cocaine to Pereira, in his automobile, while he drove on public streets in the vicinity of the school, the defendant argues that the state did not present evidence that the sale occurred within 1500 feet of the school.[2] We agree with the defendant.

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt

---

[2] The defendant raised this argument in a motion for a judgment of acquittal at the close of the state's case-in-chief. The court denied the motion.

. . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [A]ny such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded [on] the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 656–58, 1 A.3d 1051 (2010).

In an amended information, the state alleged that the defendant "did sell cocaine, a narcotic substance, within 1500 feet of the St. Francis Elementary School" in violation of § 21a-278a (b). Section 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by . . . selling . . . any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any

term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . ."

To determine whether the state satisfied its burden of proof, we turn to an examination of the relevant evidence. At trial, Rousseau testified that, on June 1, 2007, he was on duty, with Rouleau, patrolling in an unmarked police automobile. He observed the defendant operate a motor vehicle in the vicinity of St. Francis School and pick up Pereira near the back of St. Francis School on Prospect Street. The police followed the defendant's automobile for a short distance as it proceeded northbound on Prospect Street. Then, the automobile turned left onto North Street, left onto Field Street and left onto Clark Street. From Clark Street, the automobile turned right onto Prospect Street, traveling in a southerly direction, until it stopped at St. Francis School and Pereira exited the automobile. The police had observed only the defendant and Pereira in the automobile. The police suspected that a drug transaction had taken place. As the police approached Pereira, she dropped objects that were consistent with illegal drugs. Rousseau testified that he did not observe the defendant give anything to Pereira and did not know, with specificity as to a location, where any transfer of drugs from the defendant to Pereira took place. Rouleau testified to a materially similar version of events. Additionally, Rouleau testified that, during the police surveillance of the defendant after the defendant had picked up Pereira, the police did not maintain constant surveillance of the defendant's automobile. He testified that, for approximately thirty to sixty seconds, he and Rousseau could not observe the automobile and that during

this period of time the police could not state whether another person had entered or exited the automobile. Further, he testified that he did not observe the defendant exchange anything with Pereira and that, if such an exchange had occurred, he was unaware of the exact location of such exchange.

Pereira testified for the state. She testified that she contacted the defendant to purchase $80 worth of crack cocaine on June 1, 2007, and that she met the defendant on Prospect Street, behind St. Francis School, to complete the transaction. Pereira testified that she got into the defendant's automobile and took a ride with the defendant, during which time she purchased the drugs from him. She testified that she did not speak to anyone other than the defendant during this ride, that no other person approached the automobile during the ride and that the defendant did not stop or talk to any other person during the ride. She stated that she saw the crack cocaine when she and the defendant "were down a little side street." At that time, Pereira gave the defendant $80, and he gave her $80 worth of crack cocaine. Pereira did not identify a particular location or street as the place where this transaction occurred. As had occurred with prior drug sales by the defendant to Pereira, the defendant gave Pereira separate pieces of crack cocaine because she had "made a sale." Pereira testified that, upon being apprehended by the police after the sale, she told the police that the defendant had sold the drugs to her and provided the police with a written statement concerning the incident.[3]

---

[3] The statement, signed by Pereira, provides in relevant part: "I called [the defendant] looking for 80 or 90 dollars worth of rock cocaine. [The defendant] normally meets me on Prospect [S]treet by St. Francis [S]chool. I normally meet him there, get in his white car and drive around the block, or wherever he feels like. I usually buy from him out of his car, it's the only way he does business, he doesn't let too many people go to his house. [The defendant] usually keeps the drugs on him, and tonight had it in his hand when he came to pick me up. [The defendant] then dropped me off back at Prospect [S]treet in front of the school, after he drove around."

Additionally, the state presented testimony from David Scherf, an employee of Torrington's engineering department. Scherf, a geographic information systems professional, testified with regard to an aerial photograph of an area of Torrington that includes St. Francis School. Scherf testified that the photograph, marked as a full exhibit, identified St. Francis School as well as a shaded area surrounding the school that was within 1500 feet of the school. A portion of the route that the defendant traveled with Pereira, as described by Rouleau and Rousseau, is located outside of this shaded area. Specifically, portions of Prospect and Field Streets, as well as the entire length of North Street, are outside of the shaded area that is within 1500 feet of St. Francis School.

The state does not dispute that a portion of the route traveled by the defendant and Pereira is located in excess of 1500 feet of the school. Nor does the state dispute that there was no evidence to support a finding that the defendant delivered to Pereira crack cocaine at any specific geographical location along the route on which he traveled after he picked up Pereira. The state argues, instead, that to sustain its burden of proof, it need not have presented evidence that the defendant transferred physical custody of the crack cocaine to Pereira within 1500 feet of the school. The state asserts that the "sale" of the crack cocaine encompassed the defendant's course of conduct culminating in the physical delivery of the drugs and that it presented evidence that some of this course of conduct, such as meeting Pereira behind the school and returning her to the area behind the school, occurred within 1500 feet of the school. We are not persuaded.

The sufficiency issue, thus, presents a preliminary issue of statutory interpretation. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the

facts of the case . . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Leak*, 297 Conn. 524, 532–33, 998 A.2d 1182 (2010).

We review the statute aided by relevant precedent, and conclude that the defendant's interpretation of § 21a-278a (b) is supported by the plain meaning of the statute as well as cases interpreting the statute. In *State* v. *Denby*, 235 Conn. 477, 481–82, 668 A.2d 682 (1995), our Supreme Court interpreted § 21a-278a (b): "The first sentence provides that if any person who is not drug-dependent violates § 21a-277 or § 21a-278 in one of the ways set forth therein, and does so within [1500] feet of a school, that person will receive an additional three year term of imprisonment. The second sentence of § 21a-278a (b) places an additional limitation on the location requirement . . . . This [second] sentence

further defines two of the ways previously described—that is, transporting or possessing a controlled substance—by adding that they shall be with intent to sell or dispense in or on, or within the [1500] foot zone. Therefore, the plain language of § 21a-278a (b) requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within [1500] feet of a school." (Internal quotation marks omitted.) "To obtain a conviction under § 21a-278a (b), the state was required to prove that the defendant sold the drugs in a location that was within 1500 feet of a school. . . . Although the state was not required to prove that the defendant knew that the location of the sale was within this 1500 foot zone, the state was required to prove that the sale actually occurred at such a location." (Citations omitted.) *State* v. *Pagan*, 100 Conn. App. 671, 674–75, 918 A.2d 1036, cert. denied, 282 Conn. 919, 925 A.2d 1102 (2007).

As set forth previously, § 21a-278a (b) requires a showing that the defendant transacted a sale of a controlled substance within a specific geographic area, namely, within 1500 feet of a school. The legislature has defined the term "sale." General Statutes § 21a-240 (50), which applies to § 21a-278a (b), provides: " 'Sale' is any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ." General Statutes § 21a-240 (11) provides: " 'Deliver or delivery' means the actual, constructive or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship . . . ."

Our Supreme Court has interpreted "sale," as defined in § 21a-240 (50), such that it does not require proof of delivery for consideration. *State* v. *Wassil*, 233 Conn. 174, 192–93, 658 A.2d 548 (1995). The court determined

that "under § 21a-240 (50), any form of delivery of narcotics constitutes a sale of narcotics, whether the delivery is also a barter, exchange or gift, or offer therefor. We thus read the statute as if it contained a comma after the word delivery: [s]ale is any delivery, which includes barter, exchange or gift or offer therefor . . . ." (Internal quotation marks omitted.) Id., 195; see also *State* v. *Theriault*, 38 Conn. App. 815, 825–26, 663 A.2d 423, cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995). "The concept of a sale of an illicit drug is not confined to an exchange for value, but includes any form of delivery." (Internal quotation marks omitted.) *State* v. *Jackson*, 13 Conn. App. 288, 294, 535 A.2d 1327 (1988). A "sale" essentially means "delivery to another person." Id., 296.

Our review of the plain meaning of the statutory terms, as well as case law interpreting such terms, leads us readily to conclude that the state bore the burden of proving beyond a reasonable doubt that the defendant conducted a sale—which entailed an actual, constructive or attempted transfer of crack cocaine to Pereira—within the 1500 foot zone surrounding the school. The state needed to present evidence from which the jury reasonably could have concluded beyond a reasonable doubt that the delivery of drugs occurred within the prohibited geographical area. This evidentiary burden could have been sustained by means of circumstantial, rather than direct, evidence of delivery; see *State* v. *Estrada*, 71 Conn. App. 344, 351, 802 A.2d 873, cert. denied, 261 Conn. 934, 806 A.2d 1068 (2002); but it could not be the result of mere speculation or conjecture. *State* v. *Billie*, 123 Conn. App. 690, 696, 2 A.3d 1034 (2010) ("[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference

cannot be based on possibilities, surmise or conjecture." [Internal quotation marks omitted.]).

Here, the evidence did not permit the jury to find that the delivery of the crack cocaine had occurred within the 1500 foot geographical radius surrounding the school. The evidence merely permitted the jury to find that the delivery occurred sometime after Pereira entered the defendant's automobile and prior to the time that she exited the automobile. Accordingly, we conclude that the court should have granted the defendant's motion for a judgment of acquittal, which was made at the close of the state's case and denied, solely as to the violation of § 21a-278a (b), and we reverse in part the court's judgment on this limited ground.

II

Next, the defendant claims that, with regard to the counts of sale of narcotics within 1500 feet of a school and possession of narcotics with intent to sell, the court improperly instructed the jury as to the intent necessary for the crimes. In light of our resolution of the claim addressed in part I of this opinion, we need address only that part of the claim relating to the conviction of possession of narcotics with intent to sell. We reject the claim.

The defendant did not preserve this claim of instructional error for our review by means of a written request to charge covering the subject matter at issue or by taking an exception to the charge in a timely manner. See Practice Book § 42-16. The defendant affirmatively seeks review of the claim under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review the claim because the record is adequate for review and the claim is constitutional in nature, concerning one of the essential elements of the crime, intent. See *State* v. *DeJesus*, 260 Conn. 466,

472–73, 797 A.2d 1101 (2002) ("[a]n improper instruction on an element of an offense . . . is of constitutional dimension" [internal quotation marks omitted]); *State* v. *Flowers*, 69 Conn. App. 57, 68–69, 797 A.2d 1122 ("the failure [of the court] to instruct a jury on an essential element of a crime charged is error because it deprives the defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are" [internal quotation marks omitted]), cert. denied, 260 Conn. 929, 798 A.2d 972 (2002).

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 272–73, 962 A.2d 781 (2009).

Early in its charge, the court delivered instructions concerning count one, alleging the sale of narcotics by a person who is not drug-dependent. In its instructions, the court stated in relevant part: "I'm now going to define the term 'intent' for you. Intent is an element in

several of the counts, so I will instruct you to apply this definition to the term 'intent' where applicable. A person acts intentionally with respect to a result when his conscious objective is to cause such result. Intent relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result. What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain purpose or intention or a certain knowledge to do harm to another. The only way in which a jury can ordinarily determine what a person's purpose, intention or knowledge was at any given time, aside from that person's own statements or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and, from that, infer what his purpose, intention or knowledge was."

In its instructions as to count five, alleging sale of narcotics with intent to sell, the court stated in relevant part: "The defendant is charged in count five with illegal possession of cocaine with intent to sell by a [person who is not] drug-dependent . . . . The statute defining this offense imposes penalties on any person who possesses with the intent to sell to another person any controlled substance, which includes cocaine.

"The defendant is charged with the offense of possession of [a] narcotic substance with intent to sell it in violation of § 21a-277 (a) of our General Statutes. Insofar as it applies here, that statute provides as follows: Any person who possesses with intent to sell a . . . narcotic substance, shall be guilty of this offense.

"The statute sets up three elements, all of which must be established beyond a reasonable doubt in order to

justify a finding of guilty; one, that the defendant had possession of a substance; two, that the substance was a narcotic substance; and, three, he possessed it with the intent to sell."

In instructing the jury with regard to the third element of the offense, the court stated in relevant part: "The third element of this offense is that the defendant possessed a narcotic substance with the intent to sell it. I have defined 'intent' for you in count one.

"The word 'sell' here has a much broader meaning than it does in ordinary usage. It is not confined to a delivery of narcotics, which is paid for by someone else. Under our statute, § 21a-240 (50), a sale is any form of delivery, and it includes a barter, which is a trade of one thing for another. It also includes any exchange of narcotics for something else. It also includes a gift of the narcotic substance, which does not require that the defendant received or expected to receive anything in payment or exchange for it.

"A 'delivery' of a narcotic substance, insofar as that word applies here, means an actual or attempted transfer from one person to another.

"It is not necessary that any sale actually occurred. It is only necessary that the defendant intended that a sale, as I have defined that term for you, would occur. Of course, if you find that a sale did occur, that would be evidence from which you may infer that the defendant intended that a sale occur.

"If you find that the defendant possessed a substance, that the substance was a narcotic substance and that he did so with the intent to sell it, as I have defined all those terms for you, you should find the defendant guilty. If you do not find all these elements proven, however, you shall find the defendant not guilty."

Possession of narcotics with intent to sell is a specific intent crime; the statute requires that the state prove beyond a reasonable doubt that the defendant intended to cause a proscribed result—to sell the narcotics in his possession. "To prove its case [alleging a violation of § 21a-278 (b)], the state must prove beyond a reasonable doubt that (1) the defendant possessed a substance, (2) the substance was a narcotic and (3) the defendant intended to sell it." *State* v. *Crnkovic*, 68 Conn. App. 757, 763, 793 A.2d 1139, cert. denied, 260 Conn. 925, 797 A.2d 521 (2002).

Our careful review of the court's entire charge reflects that, in the context of its instructions as to count one, the court discussed both general and specific intent. The court referred to the intent to engage in conduct as well as the intent to cause a specific result. The court stated that intent was an essential element of several of the crimes with which the defendant stood charged and that the jury should apply the definition of "intent" to its subsequent instructions when instructed to do so. In discussing specific intent, the court stated: "A person acts intentionally with respect to a result when his conscious objective is to cause such result."

Although the court's general instructions concerning intent encompassed both general and specific intent, its later instructions as to the essential elements specific to the crime of possession of narcotics with the intent to sell clearly communicated to the jury that a finding that the defendant *intended to sell* the narcotics in his possession was an essential element of the crime. These later instructions obviously were related to the defendant's intent to cause a result, a sale, and not merely his intent to engage in any type of proscribed conduct. Our careful review of the record reveals that the court repeatedly and plainly conveyed to the jury that the state bore the burden of proving that the defendant

possessed narcotics with the intent to sell them. It is not reasonably possible that the jury would have understood the court's instructions to permit a finding of guilt in the absence of a finding that the defendant intended to sell narcotics. Accordingly, we conclude that a constitutional violation does not clearly exist and that the defendant was not clearly deprived of a fair trial.

### III

Next, the defendant claims that the court improperly permitted the state to elicit testimony from Pereira that, on occasions prior to June 1, 2007, she had purchased cocaine from the defendant for others and that, on such occasions, the defendant had given her cocaine as a commission on the sale. We disagree.

The record reveals the following relevant facts. During the state's examination of Pereira, the prosecutor asked Pereira about the events of June 1, 2007, and whether, on prior occasions, she had purchased cocaine from the defendant. The defendant's attorney objected to the inquiry, and outside of the jury's presence the court heard argument concerning the admissibility of the evidence. The court asked the defendant's attorney to state the grounds for the objection. The defendant's attorney stated that testimony concerning prior drug sales was not relevant to the events of June 1, 2007, and that the "shockingly prejudicial" nature of the evidence outweighed "whatever limited probative and relevant value" was inherent in the testimony. The defendant's attorney made clear that he also was objecting to any inquiry related to a general pattern of drug sales between the defendant and Pereira.

The prosecutor argued that the evidence was probative of the defendant's conduct on June 1, 2007, because it helped to explain his knowledge of the fact that he possessed and was selling cocaine. The prosecutor stated that "[i]t goes to explain that Ms. Pereira is a

trusted customer and that, in fact, their relationship is one that, when she brings business to him from third parties, she's rewarded by getting her own little extra cocaine." The prosecutor stressed that there was a pattern of drug sales between the defendant and Pereira, and that it was relevant to the jury's consideration of the facts related to the present alleged sale.

The court stated that the evidence was not relevant to prove motive, intent or accident. The court ruled, however, that the state could elicit the testimony because it tended to prove that a drug-selling agreement existed between the defendant and Pereira and that such agreement was relevant to the present charged crimes. Thus, the court stated that the prosecutor could ask Pereira whether a drug-selling arrangement existed and, in so inquiring, could refer generally to past drug sales by the defendant to Pereira. The court made clear that the prosecutor could not elicit specific information about past drug sales, such as when they had occurred. The defendant's attorney objected to the ruling.

Thereafter, in the presence of the jury, the prosecutor elicited testimony from Pereira that, on June 1, 2007, the defendant had given her "extra cocaine" as a result of her purchase of cocaine for others. The prosecutor then asked, "[o]n prior occasions when you had purchased cocaine for other people through [the defendant], had you also been given extra cocaine for yourself?" Pereira replied, "[y]es, at times."

The defendant argues that the court's evidentiary ruling was in error because the evidence elicited by the state concerning past drug sales was not relevant to any material issue in the case. The defendant argues that "[t]here was no issue in this case which was refuted by Pereira's testimony that she had dealt with the defendant in prior drug transactions. . . . [T]he evidence

served no purpose other than to demonstrate a tendency to the jury that the defendant had a predisposition to commit the crimes with which he was charged."[4]

"Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the

---

[4] Relying on *State* v. *Krzywicki*, 39 Conn. App. 832, 836–37, 668 A.2d 387 (1995), the state asserts that the claim is unpreserved and not reviewable on appeal. The state argues that, at trial, the defendant objected to the admission of the challenged evidence solely on relevancy and prejudice grounds, and "did not object to the testimony as prior misconduct evidence." We disagree that the evidentiary claim raised on appeal is substantively distinct from the objection of the defendant's attorney at trial. In *Krzywicki*, the defendant, at trial, objected to an evidentiary matter on the ground of relevance. *State* v. *Krzywicki*, supra, 836. On appeal, however, the defendant claimed that the court's evidentiary ruling reflected a denial of due process. Id. This court determined that the defendant had not raised the constitutional claim at trial and that, insofar as the defendant sought review of the unpreserved claim under *Golding*, the defendant was not entitled to such level of review because the claim advanced on appeal was evidentiary in nature. Id., 836–37. The court also declined to find that plain error existed. Id., 837.

In the present appeal, the defendant does not purport to raise a claim of constitutional magnitude and does not seek review under *Golding*. Rather, he asks this court to determine whether the trial court properly ruled that the prior misconduct evidence was relevant and that the probative value of such evidence outweighed its prejudicial effect. Because these grounds were advanced at trial, we will review the claim. We disagree that our review of the claim contravenes the analysis set forth in *Krzywicki*.

admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Millan*, 290 Conn. 816, 830–31, 966 A.2d 699 (2009).

Here, the court determined that the evidence of a drug-selling agreement between the defendant and Pereira, as demonstrated by past drug sales by the defendant to Pereira, was relevant to the jury's consideration of the crimes with which the defendant stood charged. We readily agree that the evidence that the defendant had a history of selling cocaine to Pereira and, specifically, a history of paying Pereira a commission with cocaine, was highly relevant to proving one or more elements of the crimes with which the defendant stood charged. In this case, the jury was asked, inter alia, to make findings of fact concerning the defendant's knowledge of the cocaine police found in his possession and whether the defendant intended to sell cocaine to Pereira when he picked her up near the school. These were disputed issues of fact. "Ordinarily, knowledge and intent can be proven only by circumstantial evidence; they may be and usually are inferred from a defendant's conduct." (Internal quotation marks omitted.) *State* v. *Widlak*, 85 Conn. App. 84, 90, 856 A.2d 446 (2004). It belies logic and a rational view of the evidence to suggest that the existence of a drug-selling agreement between the defendant and Pereira did not tend to explain what had occurred; the evidence tended to make it more likely that the defendant had knowledge of the cocaine in his possession and that he intended to sell it to Pereira in the manner alleged by the state. Thus, the evidence elicited by the state was relevant to understanding the defendant's conduct and intent

on June 1, 2007. See, e.g., *State* v. *Orellana*, 89 Conn. App. 71, 84–89, 872 A.2d 506 (concluding that evidence of prior drug sales by defendant relevant to proving elements of crime), cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

Apart from concluding that the prior misconduct evidence was relevant to proving one or more essential elements of the crimes with which the defendant stood charged, we conclude that the court properly determined that the probative value of the evidence outweighed its prejudicial effect. We recognize that "[a]ll adverse evidence is [by definition] damaging to one's case, but [such evidence] is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted." (Internal quotation marks omitted.) *State* v. *Allen*, 289 Conn. 550, 563–64, 958 A.2d 1214 (2008). Stated otherwise, we must determine if the evidence was unduly prejudicial to the defendant. The prejudicial effect of the evidence was clear: it portrayed the defendant as having a history of cocaine sales to Pereira. The probative value of the evidence, however, was high in that the defendant was accused of the same type of illegal activity in the present case and, as discussed above, the prior misconduct strongly tended to support a finding that the defendant intended to sell cocaine to Pereira on June 1, 2007.

The court heard arguments concerning the admissibility of the evidence. In our evaluation of the issue, it is not insignificant that the court tailored its ruling such that the state was permitted to elicit testimony that prior cocaine sales reflected an agreement concerning cocaine sales. The court did not permit the state to expose the jury to evidence concerning the facts and circumstances of the prior sales, such as when they had occurred. Although it is not dispositive of the claim under consideration, we note that "the care with which

the [trial] court weighed the evidence and devised measures for reducing its prejudicial effect militates against a finding of abuse of discretion." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 406, 963 A.2d 956 (2009). Consequently, the challenged evidence consists of Pereira's response to but one question posed by the state. The state did not engage in a long colloquy concerning prior misconduct by the defendant; the prosecutor asked one question concerning prior cocaine sales that was directly relevant to understanding the defendant's course of conduct with Pereira on June 1, 2007. The court's carefully tailored ruling, the limited quantity of prior misconduct evidence at issue and the high probative value of the evidence lead us to conclude that the evidence was not unduly prejudicial and that its admission reflected a sound exercise of judicial discretion.

IV

Finally, the defendant claims that the court violated his sixth amendment right to confront adverse witnesses as well as his right to present a defense by precluding him from asking Pereira to identify the parties for whom she was obtaining drugs from the defendant. We disagree.

The facts relevant to this claim are as follows. During her direct examination by the state, Pereira testified that the defendant sold her two bags of crack cocaine worth $80. Pereira testified that the defendant gave her another quantity of crack cocaine because she had "sold" the two bags of crack cocaine to other people. She stated that the other persons gave her the $80 for the crack cocaine, that she did not have any money of her own and that, after delivery of the cocaine by the defendant, she intended to give the cocaine to the buyers. She stated that after she left the defendant's automobile, the police approached her and that she dropped

the drugs. Pereira testified that she told the police that she had purchased the cocaine from the defendant and that she provided the police with a more detailed statement later at the police department.

During cross-examination of Pereira, the defendant's attorney asked her to identify the people to whom she was going to sell the drugs that she had obtained from the defendant. The prosecutor objected to the inquiry on the ground of relevance. The defendant's attorney replied that the inquiry was intended to test the witness' "credibility and memory of the incident." The court sustained the objection.

On appeal, the defendant claims that this evidentiary ruling deprived him of his sixth amendment right to confront Pereira and to present a defense. The defendant disagrees that the evidence was not relevant; he argues that the evidence was relevant for the purpose of assessing Pereira's credibility. In this vein, he asserts that "[i]f Pereira could not indicate from whom she had received money to purchase drugs as a broker in response to [the] defendant's question, her credibility would have been greatly tarnished and the belief that the drugs were actually transferred during the ride around Torrington from the defendant would have been diminished." Also, the defendant correctly asserts that Pereira's testimony was not merely tangential to the state's case but was relevant to critical issues of fact. He did not raise this constitutional claim before the trial court but merely had responded to the prosecutor's objection on evidentiary grounds. The defendant requests *Golding* review of the claim and, because the record is adequate to review the claim and it is of constitutional magnitude, we will review the claim under *Golding*.

"It is well established that [a] criminal defendant has a constitutional right to cross-examine the state's witnesses, which may include impeaching or discrediting

them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 379, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him . . . . The primary interest secured by confrontation is the right to cross-examination. . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. . . .

"However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Thus, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable.

. . . [Furthermore, the] trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . [Finally, the] proffering party bears the burden of establishing the relevance of the offered testimony. . . .

"Although [t]he general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Indeed, if testimony of a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to reveal any infirmities that cast doubt on the reliability of that testimony. . . . The defendant's right to cross-examine a witness, however, is not absolute. . . .

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . Although it is axiomatic that the scope of cross-examination generally rests within the discretion of the trial court, [t]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." (Citation omitted; internal quotation marks omitted.) *State* v. *Calvin N.*, 122 Conn.

App. 216, 225–26, 998 A.2d 810, cert. denied, 298 Conn. 909, 4 A.3d 834 (2010).

The gist of the defendant's argument is that, for whatever reason, Pereira might not have disclosed the names of her cocaine buyers. If this occurred, the defendant argues, it likely would have caused the jury to discount her testimony as to the events of June 1, 2007. Thus, the defendant's argument that the inquiry was likely to elicit relevant evidence is wholly dependent on Pereira's not disclosing the names of these persons, or perhaps responding in a less than credible manner to the inquiry. This inquiry was tangential to Pereira's testimony as to the central issues of the case. For purposes of determining the defendant's guilt or innocence, it was irrelevant whether Pereira was purchasing crack cocaine for herself or for anyone else. Pereira's buyers were not witnesses in the case, nor were they relevant to any of the charges against the defendant. Insofar as it related to the sale of crack cocaine, the defendant's criminal liability was based on his dealings with Pereira alone. Furthermore, when asked to present a legal justification for the inquiry, the defendant's attorney was unable to represent to the court that the inquiry was likely to elicit a response that, in objective terms, would have been relevant to assessing the witness' credibility. The defendant's attorney did not represent to the court that he had any basis to suspect that the anticipated response to his inquiry was likely to contradict Pereira's earlier testimony or any prior statements that she provided to the police. Rather, the defendant's attorney revealed that his inquiry was intended merely to "test" Pereira's recollection of relevant facts related to the incident. On this record, we conclude that the court did not abuse its discretion by excluding the inquiry on evidentiary grounds.

We conclude that the court's evidentiary ruling did not violate the defendant's sixth amendment rights. The

court's ruling was made in the context of a thorough cross-examination of Pereira. The defendant had an opportunity to, and did, cross-examine Pereira concerning subjects such as her recollection of the facts surrounding the incident, the nature of her relationship with the defendant, her interest in testifying against the defendant, her criminal history, her probationary status at the time of the incident, the criminal punishment she received in connection with the incident and alleged inconsistencies that existed between her trial testimony and the statements that she made to the police immediately after the incident. During cross-examination, the defendant's attorney attempted, via several avenues of inquiry, to challenge Pereira's credibility, including her recollection of relevant events. On the basis of our thorough review of the trial transcript, we conclude that inquiry related to Pereira's credibility and reliability as a witness was extensive.[5] Accordingly, we conclude

---

[5] By way of examples, Pereira testified that the defendant had been her boyfriend but, during cross-examination, she testified that she could not recall if she had seen him the day prior to the events at issue. The defendant's attorney also elicited testimony from Pereira that, on June 1, 2007, she was on probation for a prior drug charge, that she was prohibited from possessing drugs and that she feared the consequences of the police finding her to be in possession of crack cocaine. The defendant's attorney questioned Pereira about jail time she served for prior convictions as well as her term of probation. The defendant's attorney elicited testimony from Pereira that she had lied to her probation officer about her illegal drug use and questioned whether she had fabricated her statement implicating the defendant in the sale of cocaine on June 1, 2007. The defendant's attorney also elicited testimony from Pereira to the effect that, when she gave the police a detailed statement concerning the incident, she was concerned for herself. The defendant's attorney inquired, "[Y]ou were scared. And . . . you mean to tell us that your main priority while you were scared at the police station was to give a statement to get yourself out of trouble, right? That's what was most important to you, not going back to prison, right?" Pereira replied, "I didn't want to go back to prison, no." The defendant's attorney elicited testimony from Pereira that, following this incident on June 1, 2007, she was not charged with any crime related to the sale of narcotics but merely possession of narcotics. Also, the defendant's attorney elicited testimony from Pereira that, after the incident, she was not ordered to return to prison but was sentenced to a term of probation. The defendant's attorney repeatedly

that the defendant has not demonstrated that a constitutional violation clearly exists and clearly deprived him of a fair trial.

The judgment is reversed only as to the conviction on count two, alleging the sale of narcotics within 1500 feet of a school, and the case is remanded with direction to render judgment of acquittal as to that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

inquired as to whether Pereira's statement against the defendant was made to benefit her or to win her favor with the authorities. When Pereira denied that she had made a deal with the police or a prosecutor to stay out of jail, the defendant's attorney rhetorically challenged the truthfulness of her statement by asking whether "it just magically worked out like that?"

Furthermore, Pereira had testified that she told the police at the time of her apprehension that the defendant gave her cocaine. The defendant's attorney challenged Pereira's truthfulness by inquiring why, in her written statement to the police; see footnote 3 of this opinion; she had not referred to that fact. The defendant's attorney challenged her truthfulness by inquiring why she would have omitted this critical fact concerning the defendant from the statement, which was given on the morning of June 2, 2007.